UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ESTATE OF SCOTT STRIETER, et al.,
Plaintiffs,

v.

COUNTY OF SONOMA, et al.,
Defendants.

Case No. 24-cv-03732-TLT (KAW)

**ORDER RE 6/22/2026 DISCOVERY LETTER**

Re: Dkt. No. 137

Plaintiffs Estate of Scott Strieter, Stephen Streiter, and Kimberly Streiter filed the instant suit against Defendants County of Sonoma, Eddie Engram, Mike Merchen, Luis Patino (collectively, "County Defendants"), and CFMG, alleging constitutional and statutory violations related to the suicide of Scott Streiter ("Decedent"). (Fourth Amend. Compl. ("FAC"), Dkt. No. 116.) At the time of his death, Decedent was an inmate at Sonoma County Main Adult Detention Facility ("the Jail"). (FAC ¶ 4.) On June 22, 2026, Plaintiffs and County Defendants filed a discovery letter concerning whether the "apex" doctrine applies to the deposition of Defendant Engram, who is the current Sheriff of Sonoma County.[1] (Discovery Letter, Dkt. No. 137.)

"When a party seeks the deposition of a high-level executive (a so-called 'apex' deposition), the court may exercise its discretion under the federal rules to limit discovery." *Affinity Labs of Tex. v. Apple, Inc.*, No. C 09-4436 CW (JL), 2011 U.S. Dist. LEXIS 53649, at *40 (N.D. Cal. May 9, 2011). Such discretion may be warranted because "such discovery creates a tremendous potential for abuse or harassment." *Apple Inc. v. Samsung Elecs. Co.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012) (internal quotation omitted). The party asserting the apex doctrine has the

[1] On June 25, 2026, the case was referred to this Court for discovery purposes. (*See* Dkt. No. 138.)

"burden to demonstrate that each 'apex' witness is so entitled to that designation[.]" *Id.* The court then considers: "(1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Id.*

In general, "courts throughout the Ninth Circuit have determined that the position of sheriff is a high-ranking official to whom the apex doctrine may apply." *Estate of Levingston v. Cty. of Kern*, 320 F.R.D. 520, 526 (E.D. Cal. 2017) (citing cases). Plaintiffs, however, appear to suggest that the apex doctrine may not apply because Defendant Engram is a named defendant who is being sued individually for his role in the alleged constitutional violations. (Discovery Letter at 1.) Plaintiffs cite no authority for the proposition that as a matter of law, the apex doctrine is rendered moot simply by naming the high-ranking official or high-level executive as an individual defendant. Thus, the Court proceeds to consider whether the apex doctrine applies given that Defendant Engram is undisputedly the current sheriff.

First, the Court finds that based on the record before it, Defendant Engram has unique, first-hand knowledge of the facts at issue in this case. Here, Plaintiffs are alleging that constitutionally deficient conditions at the Jail, including chronic staffing shortages, led to Decedent's death. (Discovery Letter at 1-2.) Plaintiffs further allege that not only were these conditions the result of policies and practices maintained by Defendant Engram while he was sheriff, but that Defendant Engram made public statements about the staffing shortages and personally requested the transfer of 75 inmates to other counties' detention facilities shortly after Decedent's death. (*Id.* at 2.) Moreover, prior to being elected sheriff, Defendant Engram was the Assistant Sheriff for the Detention Division and was thus involved in the day-to-day operations of the jail, including having first-hand knowledge regarding the staffing shortages. (*Id.*)

Plaintiffs also explain that after Defendant Emgram's election as sheriff, Defendant Merchen was in charge of the Jail during the relevant time period. (Discovery Letter at 2.) During his deposition, however, Defendant Merchen was unable to recall important aspects of the case and its internal review. For example, although Defendant Merchen testified that the issues surrounding Decedent's death were briefed to Defendant Engram in their weekly meetings, and

that they would have discussed any issues affecting the jail during those weekly meetings, Defendant Merchen could not recall any specifics of those meetings. (*Id.*) Further, Plaintiffs deposed Defendant County's person most knowledgeable ("PMK") regarding the jail's compliance with Title 15, who disclosed that following Decedent's death, Defendant Engram directed certain personnel (including Defendant Merchen) to attend a multidisciplinary review of the subject incident, which Defendant Merchen did not recall. (Discovery Letter at 3.) The PMK also confirmed that Defendant Engram was responsible for keeping the Jail in compliance with Title 15. (*Id.* at 2-3.) Thus, it appears that Defendant Engram has unique, first-hand knowledge about the general policies in place and the specific facts of Decedent's death, including information provided in briefings and his personal decisions regarding how to respond to Decedent's death.

In response, County Defendants argue that information about staffing shortages, discipline of staff, meetings and briefings, and other policies and procedures can be obtained from other witnesses but does not explain who else may have information about Defendant Engram's specific decisions involving Decedent's death. (Discovery Letter at 6.) Indeed, given that Defendant Merchen -- who was in charge of the Jail at the time of Decedent's death -- testified that he could not recall many details about this issue, this would suggest a greater need for Defendant Emgram's testimony.

Second, the Court finds that Plaintiffs have sufficiently exhausted other less intrusive discovery methods. County Defendants do not appear to dispute that Plaintiffs have already taken numerous depositions, including that of Defendant Merchen and other relevant fact witnesses, as well as the County's PMK regarding Title 15 compliance. (*See* Discovery Letter at 3.) Rather, County Defendants argue that Plaintiffs should also have to first complete their PMK depositions on other issues. (*Id.* at 6.) Plaintiffs, however, have already identified information that Defendant Engram would appear to uniquely have, and it is not apparent that other PMKs would be able, for example, to explain why Defendant Engram required a multidisciplinary review of Decedent's death or why Defendant Engram personally requested the transfer of inmates to other counties' detention facilities. (*See id.* at 2.) Thus, this case goes beyond the "typical civil rights case

against a local sheriff's department," as Defendant Engram has personal knowledge regarding the staffing shortages, personally made decisions regarding a review of Decedent's death, and took actions following Decedent's death that related to the Jail's conditions. *Ahlman v. Barnes*, No. 8:20-cv-00835-JGB-SHK, 2021 U.S. Dist. LEXIS 80975, at *18 (C.D. Cal. Mar. 9, 2021) (permitting deposition of the sheriff regarding how COVID-19 was handled within the jail because the sheriff was responsible for determining policies within the jail, including having made statements that suggested he was more involved in implementation of policies as would occur in "a-run-of-the-mill civil rights action").

Accordingly, the Court will permit Plaintiffs to take a deposition of Defendant Engram, which shall be limited to four hours per Plaintiffs' concession. (*See* Discovery Letter at 4.)

This order disposes of Dkt. No. 137.

IT IS SO ORDERED.

Dated: July 17, 2026

KANDIS A. WESTMORE
United States Magistrate Judge